## DAVIS *v.* DYER & A.

A submission to arbitrators was of all accounts, claims, and demands between A, on the one part, and B and C jointly, or each or either of them separately, or as agent or agents of D, or in any other manner whatever, on the other part.   An award was made as to all matters named in the submission " except the accounts, claims, and demands between said A and said C separately, which are to be hereafter considered, and to be the subject of a separate award."   In an action of debt brought by B, as surviving partner of B and C, against A, to recover the amount of the award, it was *held,* that the submission gave the arbitrators no authority to make several awards as to the matters referred ; that the partial award was therefore invalid, and the action could not be maintained.

DEBT, by David L. Davis, surviving partner, against Orville Dyer and John Bradford, trustees of the Church family of Shakers, on an award. The plaintiff sues as " surviving partner of the late firm of Conant & Davis, doing business under the firm name of Shaker Mills Company." The submission, signed by " Shaker Mills Co. by A. Conant," " Alpheus Conant," " David L. Davis," and " Orville Dyer, John Bradford, trustees of said family," was under seal, and contained the following provision :
" This witnesseth, that it is agreed by and between the undersigned, that all accounts, claims, and demands between the Church family, so called, of the United Society of Shakers, at Enfield, on one part, and the undersigned Conant & Davis jointly, or each or either of them separately, or as agent or agents of the Shaker Mills Company, or in any other manner whatever, shall be and hereby are referred to Stephen Kenrick, John V. Barron, and Richard H. Messer, the award of whom or any two of whom made in writing    *    *    is to be final and conclusive."
The substance of the award is, that the arbitrators, " having all heard, examined, and considered the allegations, evidence, and witnesses, and counsel of both parties, as to all the matters named in

said annexed agreement, except the accounts, claims, and demands between said Church family and the said Conant separately, which are to be hereafter considered, and to be the subject of a separate award, do award the Shaker Mills Company, composed of the said Conant & Davis as partners, doing business under the name of Shaker Mills Company, of which the said Davis is the surviving partner, recover of the said Church family the sum of six thousand one hundred and ninety-three dollars and forty-seven cents, and costs."

The Church family are the defendants in interest.

The defendants claim that the award is upon a part only of the matters submitted, and is unauthorized and void, and that this action cannot be maintained.

The plaintiff claimed and offered to prove that, before any hearing was had before the referees, and by an agreement between the parties, the said Shaker Mills Company and Conant & Davis were to make a specification, and furnish the same to the Shakers, of any and all accounts, claims, and demands the said company or Conant or Davis had against the Shakers; that the Shakers were to make and furnish, within a specified time thereafter, a specification of all accounts, claims, and demands which the Shakers had against the Shaker mills, or Conant & Davis or either of them; that these respective specifications were to be filed with the referees before the hearing as the respective claims of the parties; that the Shaker Mills Company specified and furnished the Shakers a large claim against the Shakers, and Alpheus Conant separately specified and filed a large private claim against the said Shakers; that the Shakers, in the nature of a set-off, specified a large claim against the Shaker Mills Company, and a separate claim against Alpheus Conant; and that no other account, claim, or demand was made by either party, or ever claimed. The plaintiff further offered to prove, that the firm of the Shaker Mills Company, at the time of the submission and award, were and ever since have been indebted to a much larger amount than the award; that in 1860 he ceased to be a partner with Conant; that after 1860 there were no accounts, claims, and demands between the Church family and Conant & Davis; and that, after 1860, all the accounts, claims, and demands were between the Church family and Conant, and would properly form the subject of a separate award. The plaintiff also offered to prove that the defendants had notice through their agent and trustee, Dyer, of the dissolution of the firm of Shaker Mills Company in 1860, and that Conant was solely interested after that time. Said Dyer was the agent of the Church family and of the Shaker mills from 1857 to his death in 1863, and there was no settlement between Dyer and the Shaker Mills Company during that period. The plaintiff offered to prove that said Dyer was the agent of Conant after 1860, and that there was no settlement between Dyer and Conant during that period.

Messer, one of the arbitrators, has died since the award was made.

The defendants claim and offer to prove certain facts in answer to the claim and offer of the plaintiff, which need not now be stated.

The court reserved the questions whether this action can be maintained, and whether any of the evidence offered by either party is competent in this suit.

*Murray*, for the plaintiff, cited *Baspole's case*, 8 Co. 98; Brooke 44; Plowd. 289; 1 Keb. 885; 1 Lev. 140; *Dowse* v. *Coxe*, 3 Bing. 20; *Fay* v. *Bond*, 1 Allen 211; *Kendrick* v. *Tarbell*, 26 Vt. 416; *Ott* v. *Schroeppel*, 5 N. Y. 483; 4 Barb. 250; *Joyce* v. *Haines*, Hardre's 399; Kyd on Awd. 121; *Carter* v. *Carter*, 1 Vern. 259; *Arnold* v. *Pole*, Rol. Abr. D. 5; Russ. on Arb. & Awd. 123; Morse on Arb. & Awd. 31; 1 Bac. Abr. 136; Cro. Car. 433; *Winter* v. *White*, 1 Brod. & Bing. 350; Morse on Arb. & Awd. 342; *Turner* v. *Turner*, 3 Russ. 494; *Athelstone* v. *Moone*, 1 Com. 547; Kyd on Awd. 242; Cald. on Arb. 123–130; *Rees* v. *Waters*, 16 M. & W. 263.

*Pike*, on the same side, in his oral argument, referred to *Fidler* v. *Cooper*, 19 Wend. 285; *Dater* v. *Wellington*, 1 Hill 319; *Warfield* v. *Holbrook*, 20 Pick. 531; Russell on Awd. 138, 139; *Adcock* v. *Wood*, 6 Exch. 814; *Wood* v. *Adcock*, 7 Exch. 468; *Wrightson* v. *Bywater*, 3 M. & W. 199.

*Bingham*, for the defendants, cited and commented on Cald. on Arb., ch. 5; Kyd on Awd. 140, 141, and 171; *Howard* v. *Edgell*, 17 Vt. 29; *Ott* v. *Schroeppel*, 7 Barb. 431; *Philbrick* v. *Preble*, 18 Me. 255; *Bean* v. *Farnam*, 6 Pick. 269; *Varney* v. *Brewster*, 14 N. H. 49; *Quimby* v. *Melvin*, 28 N. H. 263; *Tudor* v. *Scovell*, 20 N. H. 171; *Whittemore* v. *Whittemore*, 2 N. H. 26; *Norris* v. *Daniel*, 10 Bing. 507; *Winter* v. *Munton*, 2 Moore 723; *Samuel* v. *Cooper*, 2 A. & E. 752; *Tribe* v. *Upperton*, 3 A. & E. 295; *Randall* v. *Randall*, 7 East 81; *Stone* v. *Phillipps*, 4 Bing. N. C. 37; *Doe, dem. Madkins* v. *Horner*, 8 A. & E. 235; *Robson* v. *Railston*, B. & Ad. 723; *Morse* v. *Hale*, 27 Vt. 660.

*Tappan*, on the same side, discussed the whole subject at length, and, in addition to the authorities above, referred to *Whitcher* v. *Whitcher*, 49 N. H. 176; 2 Par. on Con. 200; 1 Rol. Abr., Tit. Arbitrament E.; *Re Williams*, 4 Den. 194; 1 Bac. Abr. 135; *Hawkins* v. *Colclough*, 1 Burr. 277; Morse on Arb. 341; *Wright* v. *Wright*, 5 Cow. 197; *McNear* v. *Bailey*, 18 Me. 251; *Richards* v. *Drinker*, 1 Halst. 307; *Harker* v. *Hough*, 2 Halst. 428; *Carnochan* v. *Christie*, 11 Wheat. 446; *Edwards* v. *Stevens*, 1 Allen 315; *Mitchell* v. *Staveley*, 16 East 58; *James* v. *Thurston*, 1 Clifford 369; *Houston* v. *Pollard*, 9 Met. 164; *Archer* v. *Williamson*, 2 Har. & Gill 62; Morse on Arb. 353; *Lyle* v. *Rodgers*, 5 Wheat. 394; *Ingram* v. *Milnes*, 8 East 445.

LADD, J.   We think it is impossible to sustain this award.   The terms of the submission are clear and explicit, and seem to admit of but one interpretation.   All accounts, claims, and demands between the Church family on the one hand, and Conant & Davis, as well as

the individual members of that firm, in whatever capacity, on the other, are referred; and there is no provision for more than one award, or for separate awards upon separate or independent matters supposed to be embraced in the submission. The award shows on its face that it is of only part of the matters referred,—that is, of the accounts, claims, and demands between the Church family and Conant & Davis. It expressly excepts " the accounts, claims, and demands between said Church family and the said Conant separately, which are to be here-after considered, and to be the subject of a separate award." Of course there can be no pretence that the award is coextensive with the submission, and no evidence outside the award itself is needed to es-tablish that fact. The question is, Where, if at all, did the arbitrators get the power thus to award upon part of the matter submitted to them, leaving the rest for further consideration and a further award?

The plaintiff's position is, that the matters submitted are entirely distinct and independent; that the parties are different, and their inter-ests, so far as the subject-matter is concerned, in no way connected; and, therefore, that an award upon any one of those independent matters is good without reference to the terms of the contract of submission orig-inally concluded and established by the parties. Some early cases, such as *Ormelade* v. *Cooke*, Cro. Jac. 355, *Baspole's case*, 8 Coke 98, may give some countenance to the idea that unless the submission expressly makes it conditional, " *ita quod* " the award be of all matters embraced in the submission, an award of part only may be good. But no such doctrine was ever adopted in this state, and quite the contrary seems to be settled in *Varney* v. *Brewster*, 14 N. H. 49, *Quimby* v. *Melvin*, 28 N. H. 263, *Whittemore* v. *Whittemore*, 2 N. H. 26, and *Tudor* v. *Scovell*, 20 N. H. 171. The cases and authorities referred to by the defendants' coun-sel, as well as some of those cited for the plaintiff, and others that might be added, were it necessary, show quite conclusively that the weight of modern authority is in the same direction. The cases gen-erally put it upon the true ground of the intention of the parties, as shown by a fair construction of the contract of submission; and the only significance attached to what is known as the *ita quod* clause is, that such a clause in the instrument very clearly shows the intention to be that all matters contained in the submission shall be decided by the arbitrators. But if such intention fairly appears upon the whole instrument, read and construed together, it makes no difference whether it contains this clause or not. The case of *Randall* v. *Randall*, 7 East 81, plainly rests upon the same ground, for there the only condition in the bonds was, " so as the said award were made in writing and ready to be delivered to the parties on or before the 12th of May;" yet Lord ELLENBOROUGH gives this the effect of the *ita quod* clause. He says the authority given to the arbitrators was conditional, *ita quod* they should arbitrate upon these matters by a certain day. The only condition expressed was, that the award should be by a certain day; and the fur-ther condition that it should be of all the matters contained in the submission, was found in the general import and purpose of the bonds

and the intention of the parties as gathered therefrom. That case can hardly be distinguished from the present. But, without stopping to examine the cases which are numerous to the same effect, or to comment upon such as may appear to give countenance to a different view, the reason of the thing seems to me quite conclusive. All the power of arbitrators comes from the submission. It is the agreement of the parties that not only creates the tribunal, but clothes them with whatever authority they have to act. It certainly follows that, unless authority to make separate awards is to be found in the contract of submission, it does not exist. Suppose it be conceded that the parties in the present case put into their deed of submission independent matters which ought to be heard separately, and ought to be made the subject of several separate awards: what follows? Certainly the court must determine the legal effect of what they did do, and not what would be the effect of something else which they ought to have done, or might more properly have done. In other words, the court must give construction to the written contract of submission as it is, applying to it the usual rules of interpretation. And while it is doubtless true that every reasonable intendment is to be made to support an award, we must at the same time bear in mind that neither the arbitrators nor the court can make a new contract for the parties, or change one they have made for themselves.

Looking, then, at this submission, where is the evidence of an intention by the parties to provide for separate awards, or for more than one award? Upon a careful examination, as well of its language as of the subject-matter to which it relates, we fail to discover anything from which such a purpose can be inferred.

There is no express provision to that effect, as in several of the cases to which we have been referred by the defendants' counsel, nor is there anything on the face of the submission that implies or even suggests that such a course might be pursued. If authority to make separate awards is conferred upon the arbitrators by this paper, it would seem to be difficult, if not impossible, to frame one that would not give the same power except by inserting an express stipulation against it. But the general rule is that there shall be but one award, and that entire and final. Morse on Arb. & Awd. 369, *et seq.* No such stipulation, therefore, being ever necessary, no argument in favor of the construction contended for by the plaintiff can be drawn from its absence here.

In considering the subject-matter of the submission with a view to ascertaining its true construction, the offer of the plaintiff to prove certain facts should perhaps be taken into the account. The most that these facts show is, that several independent matters of controversy, and several distinct parties having separate claims and interests, were joined together and included in the same submission. Now, if it were doubtful upon the instrument itself whether separate awards were not intended and provided for therein, the circumstance that separate matters and independent parties were embraced in it would doubtless be

entitled to more or less weight in deciding what the parties meant by the language they used, although no such fact could be allowed the effect of importing into the contract what the parties did not place there, nor of changing the plain sense of the words they have used to express their meaning.

But the trouble is, no such doubt arises upon reading the instrument; its language is neither doubtful nor ambiguous. The parties, in language which admits of but one construction, bound themselves by deed to refer those distinct and independent concerns (if they were distinct and independent) all at once to the same board of arbitrators, and severally agree to abide their award thereon; and this being so, the *a priori* probability or improbability of their doing such a thing becomes of no consequence whatever.

It seems impossible, however, to read the submission without being strongly inclined to the belief that when the parties made it they did, in fact, understand and intend just what their deed legally imports, namely, that there was some connection between the matters referred, and between the parties, which made it proper and right that the whole should be the subject of a single submission, to be tried and awarded upon together.

Should it even be admitted, as has been suggested, that the purpose may have been to defraud the creditors of Conant & Davis, by providing a way whereby the balance due that firm from the Church family might be applied in payment of a private debt due from Conant to the family, the complexion of the matter is not changed. The court can no more substitute a good submission for one that is tainted with fraud and illegality, and therefore bad, than for one that is good. Each proposition alike involves the making of a new contract for the parties, as well as the abrogation of one which they have made for themselves.

Some doubts were at first entertained as to the effect of the extensions of time for making a further award, agreed to by the defendants after the first award was published. Those extensions are three in number, written on the back of the original submission, and signed by the trustees of the Church family on behalf of the defendants, the same as the submission. The last is not dated, and is as follows: "The time for making a final award is hereby extended to October 1, 1872."        Signed,        ULYSSES DOWE, *Administrator*.        [L. S.]

          ORVILLE DYER,   ⎱ *Trustees.*        [L. S.]
          JOHN BRADFORD,   ⎰                   [L. S.]

The prior extensions are similar. The question really is not simply whether this can be regarded as a waiver of objections to the sufficiency of the award already made, but whether it can be allowed the further effect of a new and independent engagement that the same shall be good as an award, even though no further hearing were had and no further award made upon the other matters embraced in the submission.

We are quite satisfied, however, upon consideration, that this cannot be so. It is by no means clear that the defendants, on the publication

of the partial award, might not have declined to proceed further, on the ground that the award was not entire and coextensive with the submission. If that be so, an agreement to extend the time for making a further and final award might doubtless be fairly construed as a waiver of that objection. But to hold that it implies an undertaking that the partial award already made shall be good, even though no further hearing were had and no final award ever made, would be giving it an effect which clearly could never have entered the minds of the parties, and which there is nothing in the transaction to warrant. We cannot doubt that it was the understanding of both parties that the validity of the award already made was dependent on procuring a further and final award covering all the matters in the submission, and that these enlargements of time were agreed to in that view. The conclusion is, that, admitting the facts which the plaintiff offered to prove to be true, the action cannot be maintained, and there must be

*Judgment for the defendants.*